1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

| | |
|---|---|
| MARCELLUS GREENE a.k.a. MARVELLOUS AFRIKAN WARRIOR,<br><br>Plaintiff,<br><br>v.<br><br>LAUREL OLVERA, et al.,<br><br>Defendants. | CASE NO. 1:16-cv-01605-LJO-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS** |

16

17

18

19

20

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His complaint is before the Court for screening. (ECF No. 1.) He has declined Magistrate Judge jurisdiction. (ECF No. 5.) No other parties have appeared.

21

**I.     Screening Requirement**

22

23

24

25

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii)

26

**II.    Pleading Standard**

27

Section 1983 "provides a cause of action for the deprivation of any rights,

28

privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III.   Plaintiff's Allegations

Plaintiff, who claims he is "enslaved illegally," is detained at Coalinga State Hospital ("CSH") pursuant to the Sexually Violent Predator Act ("SVPA"). He names the following defendants, all employed by CSH: Griselda Cordova, Diana Garcia, Rashaun Casper, and Derek Stout (sued in their official capacities); Laurel Olvera, Cleide Klasson, Joyce McIntosh, Dr. Scurry, and Vincent Oliver (sued in their individual and official capacities; and Denis Gritton and Jane Doe 1 (sued in their individual capacities).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff alleges disrespectful treatment, assault and battery, excessive force, violation of his right of access to the courts, and violations of his Fourteenth Amendment due process rights. He seeks declaratory judgment as well as injunctive and monetary relief. He asks that Defendants be criminally "sanctioned" as well as decertified. His allegations may be summarized essentially as follows:

## A.    Disrespectful Treatment

Defendants Garcia and Cordova were disrespectful when Plaintiff needed lubricants and hearing aid batteries. These Defendants are supervised by Defendants Stout and Casper.

## B.    Access to Copy Machines, Loss of Property, and Assault

On October 17, 2016, Plaintiff requested copies in the library. Defendant Gritton told Plaintiff the copy machine was not working, and when Plaintiff asked to go to the copy center, she said, "hell no!" Plaintiff checked out the "yellow catalog," then put the three papers he needed copied into a red folder. He asked a library worker to watch his backpack and items while he went to the copy center. When Plaintiff returned to the library, the yellow catalog was missing, along with Plaintiff's three pens. Gritton told Plaintiff his level had been placed on hold and the unit staff had been notified. Plaintiff stated his level was placed on hold because Defendants were being derelict in their duties. Plaintiff left the library and spoke to Mr. Grady. He told Mr. Grady that he went to the copy center and that he had to go in order to prepare for his upcoming attorney visit. Unit 8 staff members arrived and escorted Plaintiff back to his unit "with no further drama."

On October 18, 2016, Plaintiff asked to be escorted to his advanced yoga class, in which he enrolled as physical therapy for a knee injury. Defendant Olvera denied the request. Defendant Oliver learned of the denial and sided with Olvera. Plaintiff told Olvera that "s--- shall get ugly real fast" and Olvera went to speak to Defendants Stout and Casper. Plaintiff collected his belongings and walked down the stairs, followed by

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Olvera, Stout, and Casper. When Plaintiff got past Unit 9 and stopped, Casper hit the alarm. Stout threw Plaintiff against the wall, grabbed Plaintiff's left arm, twisted it, then kicked Plaintiff in his right leg and forced him to the ground. Casper, who is obese, then put Plaintiff in a chokehold with his upper body weight on top of Plaintiff. Plaintiff complained that he could not breathe and that Stout was twisting his left wrist. As Plaintiff screamed, Casper said, "I thought [you] said [you] had no bitch" and "shut the f--- up." When responding officers arrived, Casper asked for leg restraints. Plaintiff was restrained and dragged to Unit 5, where he was placed in five point restraints. At no time was Plaintiff angry, aggressive, or combative.

While restrained, Plaintiff eventually fell asleep. When he woke up he complained that his left restraint was too tight and his right knee and left arm were in pain. Francisca Olalemi (not a defendant) told the officers to loosen the left restraint and ordered an MRI. Plaintiff's left wrist was swollen and red. He was taken for X-rays, which came back negative.

### C.      Refusal of Medication

Plaintiff chose not to take his Seroquel medication for approximately six weeks and signed refusal forms stating so. Defendant Dr. Scurry told Plaintiff that if he did not take the Seroquel, she would forcibly medicate him. Defendants Klasson and McIntosh also "teamed up" against Plaintiff in an attempt to force him to take the medication, and threatened to invoke Cal. Welf. & Inst. Code §§ 6600 and 6606 (which allow for the administration of involuntary psychotropic medication to sexual violent predators).

### D.      Medical Care Claims

Dr. Scurry also decreased Plaintiff's Venlafaxine (an antidepressant), medication that Plaintiff was prescribed pursuant to a court order while he was in the Los Angeles County jail.

4

1
2
3

Plaintiff asked Klasson multiple times to include Plaintiff's brother, Dr. Marius A. Greene, on Plaintiff's medical team, however she refused to provide Dr. Greene with the necessary release forms.

4
5

### E.     Miscellaneous Allegations

6
7

Plaintiff accuses Defendants of conspiring to violate Plaintiff's rights, retaliating against Plaintiff for filing complaints, falsifying reports, impeding Plaintiff's access to a functioning copy machine, and subjecting Plaintiff to "punitive" mistreatment.

8

## IV.     Discussion

9
10
11
12

Plaintiff's complaint states no cognizable claims. Additionally, Plaintiff improperly files suit against multiple unrelated Defendants asserting multiple unrelated claims. His complaint will be dismissed with leave to amend. Should Plaintiff choose to amend, he must adhere to the pleading standards set forth below.

13

### A.     Misjoinder of Claims under Rule 18(a)

14
15
16

A plaintiff may not proceed on myriad unrelated claims against different staff members in one complaint:

17
18
19
20
21
22

> "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."

23

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

24
25
26

Plaintiff will not be permitted to proceed with a "mishmash of a complaint." Id. Plaintiff's amended complaint must comply with Rule 18(a); if it does not, the Court will choose which claims will proceed and will dismiss out all unrelated claims.

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.     Scope of Relief

Plaintiff's request that Defendants be criminally charged and "decertified" is appropriately construed as a request for injunctive relief. In any civil action involving prison or jail conditions seeking prospective relief, the Court will grant only the relief necessary to correct the violations of the rights particular to the case. 18 U.S.C § 3626(a)(1)(A). "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id.   Furthermore, a federal court lacks jurisdiction to direct the actions of non-parties. Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties.") Plaintiff's desire for criminal sanctions and decertification extends well beyond the jurisdictional reach of this Court.

### C.     Claims Cognizable Only in Habeas Corpus

Plaintiff repeatedly states that he is detained "illegally" and demands that he be immediately released. To the extent Plaintiff wishes to challenge the fact or duration of his confinement, he may not do so in an action brought pursuant to § 1983. The exclusive method for challenging the fact or duration of Plaintiff's confinement is by filing a petition for a writ of habeas corpus. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). See 28 U.S.C. § 2254(a). Plaintiff will not be permitted to renew his claims that he is wrongfully detained.

### D.     Official Capacity Claims

Plaintiff sues several Defendants in their official capacities.  Some Defendants are sued exclusively in their official capacity.

First, a plaintiff cannot recover money damages from state officials sued in their official capacities.  Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Official capacity suits may seek only prospective or injunctive relief.

6

1

2

3      See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010).

4             Furthermore, in addition to being limited to prospective relief, a plaintiff pursuing

5      defendants in their official capacities must demonstrate that a policy or custom of the

6      governmental entity of which the official is an agent was the moving force behind the

7      violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159,

8      166 (1985). That is, the plaintiff must establish an affirmative causal link between the

9      policy at issue and the alleged constitutional violation. See City of Canton, Ohio v.

10     Harris, 489 U.S. 378, 385, 391-92 (1989). A plaintiff must "identify the law or policy

11     challenged as a constitutional violation and name the official within the entity who can

12     appropriately respond to injunctive relief."   Hartmann v. California Dep't of Corr. &

13     Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Los Angeles County v. Humphries,

14     562 U.S. 29, 35-36 (2010)). Here, Plaintiff has identified no custom or policy within CSH

15     generally that was the moving force behind any of the violations Plaintiff allegedly

16     suffered.  Plaintiff's official capacity claims will be dismissed with leave to amend.

17            **E.      Linkage**

18            Under § 1983, Plaintiff must demonstrate that each named defendant personally

19     participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons

20     v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton,

21     588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

22     2002). Liability may not be imposed on supervisory personnel under the theory of

23     respondeat superior, as each defendant is only liable for his or her own misconduct.

24     Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable

25     if they "participated in or directed the violations, or knew of the violations and failed to act

26     to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v.

27     Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570

28     (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th

       Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff alleges that Garcia and Cordova were disrespectful when Plaintiff needed hearing aid batteries and lubricants. These allegations do not state constitutional violations. There are no other facts to link these Defendants to a constitutional violation. Plaintiff's claims against these individuals will be dismissed with leave to amend.

### F.    Medical Care Claims

The Fourteenth Amendment, rather than the Eighth Amendment, provides the standard for evaluating the constitutionally protected interests of individuals who have been involuntarily committed to a state facility. Rivera v. Rogers, 224 Fed. Appx. 148, 150–51 (3d Cir. 2007); see Youngberg v. Romeo, 457 U.S. 307, 312 (1982). Such individuals are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22. In determining whether the constitutional rights of an involuntarily committed individual have been violated, the court must balance the individual's liberty interests against the relevant state interests, with deference shown to the judgment exercised by qualified professionals. Id. at 320-22.

A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 322–23. The professional judgment standard is an objective standard and it equates "to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." Ammons v. Wash. Dep't of Soc. & Health Servs., 648 F.3d 1020, 1029 (9th Cir. 2011) (citations and emphasis omitted).

Plaintiff alleges that Defendant Scurry decreased Plaintiff's antidepressants and Defendant Klasson refused to provide Plaintiff's brother with medical release forms so that he could join Plaintiff's treatment team. These allegations do not reflect a lack of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

professional judgment or conscious indifference. It therefore fails to state a claim. Plaintiff will be given leave to amend.

### G.     Excessive Force

As with Plaintiff's conditions of confinement claims, Plaintiff's claims of excessive force are appropriately evaluated under the due process clause of the Fourteenth Amendment rather than the cruel and unusual punishment clause of the Eighth Amendment. Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002) (*overruled on other grounds* by Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016).

The Fourteenth Amendment protects Plaintiff from "the use of excessive force that amounts to punishment." Id. at 1197; see also Bell v. Wolfish, 441 U.S. 520, 535 (1979) (civilly committed persons may not be subjected to conditions that amount to punishment). Claims of excessive force by detainees are analyzed under the "objective reasonableness" standard, which requires an evaluation of whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, regardless of the officer's underlying intent or motive. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (2015). When determining whether an officer's use of force was objectively unreasonable, courts must balance the state's legitimate interest in maintaining order in the facility in which the individual is detained, and, where appropriate, defer to the "policies and practices that in th[e] judgment" of officials "are needed to preserve internal order and discipline and to maintain institutional security." Id. at 2473; Bell, 441 U.S. at 540.  Courts may look at a variety of factors to determine whether the force used was objectively unreasonable, including but not limited to: the relationship between the need for the use of force and the amount of force used, the extent of the detainee's injury, the threat reasonably perceived by the officer, and whether the detainee was actively resisting.  Kingsley, 135 S. Ct. at 2473.

1

2

3          Here, Plaintiff claims he was forced to the ground, put in a chokehold, and

4  "illegally" placed in handcuffs and five-point restraints when he attempted to leave the

5  unit. As he maintains he was never combative or aggressive during this encounter, this

6  use of force may have been objectively unreasonable. However, Stout and Casper are

7  sued in their official capacities only, and as Plaintiff has not named a policy or practice

   that led to his injuries, he cannot proceed on this claim. His excessive force claim will be

8  dismissed with leave to amend.

9          **H.      Deprivation of Procedural Due Process**

10         Plaintiff states his "level" was placed on hold, apparently because he went to the

11 copy center without permission. He also accuses Defendants of filing false reports. He

12 claims these acts violated due process. To make such a claim, Plaintiff must first

13 establish the existence of a liberty interest for which the protection is sought. Liberty

14 interests may arise from the Due Process Clause itself or from state law. Hewitt v.

15 Helms, 459 U.S. 460, 466-68 (1983). In addition to establishing a liberty interest, Plaintiff

16 must also establish that he was not provided all of the process he was entitled to under

   federal law.

17         First, Plaintiff has no constitutional right to be free from false accusations. See,

18 e.g., Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18,

19 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the

20 procedural due process requirements as set forth in Wolff v. McDonnell.'" (citing

21 Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984))); Solomon v. Meyer, No. 11-cv-

22 02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no

23 constitutionally protected right to be free from false disciplinary charges.").

24         To the extent the false reports resulted in disciplinary action against Plaintiff, and

25 to the extent the hold on Plaintiff's level was disciplinary in nature, civil detainees have a

26 liberty interest in not being punished without due process. See Rhoden v. Carona, No.

27 SACV 08-00420 JHN (SS), 2010 WL 4449711, at *21 (C.D. Cal. Aug. 24, 2010) (citing

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996) (requiring pretrial detainees be afforded a hearing prior to being subjected to disciplinary action)); see also Cerniglia v. Cty. of Sacramento, No. 2:99-cv-01938-JKS-DAD, 2008 WL 1787855, at *14 (E.D. Cal. Apr. 18, 2008) (noting that "[c]ontrolling law in this circuit is that due process requires that a pretrial detainee be provided a hearing before being subjected to internal disciplinary action" and seeing no reason not to extend that principle to civil detainees).

The Supreme Court has outlined the minimum procedural protections due before a detainee may be deprived of a liberty interest effecting major changes in the conditions of confinement amounting to punishment. Wolff, 418 U.S. at 556; see also Mitchell, 75 F.3d at 525 (applying Wolff to pretrial detainees); Rhoden, 2010 WL 4449711, at *22 (applying Wolff to civil detainees.) They are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 563-71.

Plaintiff's complaint is bereft of facts pertaining to a hearing (or lack thereof) regarding the hold on his level or any other disciplinary actions taken against him. Accordingly, the allegations fail to state a claim. Plaintiff will have leave to amend.

## I.    Right to Refuse Medical Treatment

Plaintiff states that Defendants violated his Fourteenth Amendment right to refuse unwanted medical treatment. See Cruzan by Cruzan v. Dir., Mo. Dept. of Health, 497 U.S. 261, 278 (1990) (A "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment."). In the prison context, "the Due Process Clause permits the state to treat a prison inmate who has a serious mental

illness with antipsychotic drugs against his will" so long as "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest" and this determination has been made by medical personnel under "fair procedural mechanisms." Washington v. Harper, 494 U.S. 210, 227-32 (1990). In such situations, to comport with due process, the government must show both the need for and appropriateness of the unwanted treatment. Riggins v. Nevada, 504 U.S. 127, 135 (1992).

Plaintiff is not a prisoner, however, but rather a civil detainee held pursuant to the SVPA. The circumstances of his commitment imply that he has no expectation that he will be free from unwanted psychotropic medication. Cal. Welf. & Inst. Code §§ 6600 et seq. (defining a sexually violent predator ("SVP") as someone with a diagnosed mental disorder that makes him a danger to others, requiring the state to treat said mental disorder in a designated SVP, and authorizing the forcible medication of an unwilling SVP under certain circumstances); Hydricks v. Hunter, 500 F.3d 978, 994 (9th Cir. 2007) ("The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility") (*vacated on other grounds* by Hunter v. Hydricks, 556 U.S. 1256 (2009)). Under the framework set forth in Harper, therefore, it appears that due process would permit a state hospital to forcibly medicate an individual who has been shown to pose a threat to those around him. Townsend v. King, No. 1:13-cv-01742-GSA-PC, 2014 WL1024009, at *4 (E.D. Cal. Mar. 17, 2014) (citing Jurasek v. Utah State Hosp., 158 F.3d 506, 511 (10th Cir. 1998)).

The medication Plaintiff sought to refuse was Seroquel. Plaintiff does not state what it was prescribed for or whether it was determined that Plaintiff in fact posed a danger to himself or those around him. In any event, it is not clear that the unwanted medication was in fact administered. Plaintiff's claim will be dismissed with leave to amend. Plaintiff is reminded, however, that to the extent Plaintiff challenges his designation as a SVP and the treatment he receives thereto, that challenge is not a

proper basis for a § 1983 lawsuit.

### J.      Processing of Grievances and Access to the Courts

Plaintiff alleges generally that Defendants have "hampered" his ability to file grievances and petition the federal government for redress. He also claims the lack of a functioning copy machine in the law library impedes his access to the courts.

The existence of a grievance process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, No. C 99–2036 MJJ PR, 1999 WL 1051947 (N.D. Cal. 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, No. C 96–2484 FMS 1996 WL 506863 (N.D. Cal.1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); Murray v. Marshall, No. C 94–0285 EFL, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

Detainees do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. Such a claim would be based on the theory that interference with the grievance process resulted in a denial of the inmate's right to access to the courts. This right includes petitioning the government through the prison grievance process. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). The right of access to the courts,

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356–57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n. 3 & 354–55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354–55.

An individual alleging a lack of access to the courts must allege an actual injury. See Lewis, 518 U.S. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

Plaintiff has not demonstrated how Defendants' interference with the grievance process resulted in an actual injury. Additionally, while state officials must provide detained individuals with access to adequate law libraries, Bounds, 430 U.S. at 828, Plaintiff has not shown how the lack of a functioning copy machine on October 17, 2016 rendered the law library inadequate. His claims will be dismissed with leave to amend.

### K.      Loss of Personal Property

Plaintiff alleges that when he returned to the law library after visiting the copy center, his personal property was gone. He does not attribute responsibility for the loss of his property to any particular Defendant.

Civil detainees have a protected interest in their personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, the procedural component of the Due Process Clause is not violated by a random, unauthorized deprivation of property if the state provides an adequate post-deprivation remedy.  Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).  California provides

1
2
such a remedy.  Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§810-895).

3
If Plaintiff wishes to make a claim for the loss of his property, he must first have

4
pursued his state remedies.

5
**L.     Conspiracy**

6
To state a claim for conspiracy under section 1983, Plaintiff must show the

7
existence of an agreement or a meeting of the minds to violate his constitutional rights,

8
and an actual deprivation of those constitutional rights.  Avalos v. Baca, 596 F.3d 583,

9
592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). Plaintiff alleges

10
neither. He will be given leave to amend.

11
**M.     Retaliation**

12
Section 1983 provides for a cause of action against officials who retaliate against

13
inmates and detainees for exercising their constitutionally protected rights. Pratt v.

14
Rowland, 65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials

15
are cognizable under § 1983.") A viable claim of retaliation entails five basic elements:

16
"(1) An assertion that a state actor took some adverse action against [the detainee] (2)

17
because of (3) that [detainee's] protected conduct, and that such action (4) chilled the

18
[detainee's] exercise of his constitutional rights, and (5) the action did not reasonably

19
advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th

20
Cir. 2005); *accord* Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di Vittorio, 658 F.3d

21
1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

22
The second element focuses on causation and motive.  See Brodheim v. Cry, 584

23
F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct was a

24
"'substantial' or 'motivating' factor behind the defendant's conduct."  Id. (quoting

25
Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Although it can

26
be difficult to establish the motive or intent of the defendant, a plaintiff may rely on

27
circumstantial evidence.  Bruce, 351 F.3d at 1289; Hines v. Gomez, 108 F.3d 265, 267-

28
68 (9th Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be considered as

15

1

2

3

circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a complaint and refusing medical treatment

are generally constitutionally protected. Valandingham v. Bojorquez, 866 F.2d 1135,

1138 (9th Cir. 1989); Cruzan, 497 U.S. at 278.

4

5

6

7

With respect to the fourth prong, the correct inquiry is to determine whether an

official's acts "could chill a person of ordinary firmness from continuing to engage in the

protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir.

8

9

2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

With respect to the fifth prong, a detainee must affirmatively allege that "the

10

11

"authorities' retaliatory action did not advance legitimate goals of the [] institution or was

not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d at 532.

12

13

14

At present, Plaintiff provides no more than conclusory allegations that he was

subjected to "punitive" treatment as a result of his protected conduct. His retaliation

claims will be dismissed with leave to amend.

15

**N.     State Law Claims**

16

17

18

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has

original jurisdiction, the district court "shall have supplemental jurisdiction over all other

claims in the action within such original jurisdiction that they form part of the same case

19

20

21

or controversy under Article III [of the Constitution]," except as provided in subsections

(b) and (c).  "[Once judicial power exists under § 1367(a), retention of supplemental

jurisdiction over state law claims under 1367(c) is discretionary." ACI v. Varian Assoc.,

22

23

24

Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  The Supreme Court has cautioned that "if the

federal claims are dismissed before trial, . . . the state claims should be dismissed as

well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

25

26

27

California's Tort Claims Act requires that a tort claim against a public entity or its

employees be presented to the California Victim Compensation and Government Claims

Board ("the Board"), formerly known as the State Board of Control, no more than six

28

1
2
3
4
5
6
7
8
9
10
11

months after the cause of action accrues.  Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009).  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Super. Ct. of Kings Cty. (Bodde), 90 P.3d 116, 124 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act.  State v. Super. Ct., 90 P.3d at 124; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).  An action must be commenced within six months after the claim is acted upon or is deemed to be rejected. Cal. Govt. Code § 945.6; Moore v. Twomey, 16 Cal. Rptr. 3d 163 (Cal. Ct. App. 2004).  Should Plaintiff believe he can allege compliance with the Tort Claims Act, the standards for the tort claims of assault and battery below:

12
13
14
15
16
17
18
19
20
21
22
23
24
25

       Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code § 240, 242 (West 2005); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988).  For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm.  Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted).  For battery, a plaintiff must show that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff.  Id. (citation and quotations omitted).

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.      Conclusion and Order

Plaintiff's complaint does not state a cognizable claim for relief. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted;

2. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint, filed October 26, 2016;

3. Within thirty (30) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and

1

2

    4.  If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, this action will be dismissed, with prejudice, for failure to comply with a court order and failure to state a claim.

3

4

5  IT IS SO ORDERED.

6

7    Dated:    January 5, 2017        /s/ *Michael J. Seng*

                                                                   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28